IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHAEL RODRIGUEZ, )
 )
 Petitioner, )
 )
v. ) Civ. No. 13-1971-SLR
 )
DAVID PIERCE, Warden, and )
ATTORNEY GENERAL OF THE )
STATE OF DELAWARE, )
 )
 Respondents. )

---

Michael Rodriguez. Pro se petitioner.

Karen V. Sullivan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

**MEMORANDUM OPINION**

April 5, 2016
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is petitioner Michael Rodriguez's ("petitioner") amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 3; D.I. 9) Petitioner is incarcerated at the James T. Vaughn Correctional Institution in Smyrna, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Superior Court in petitioner's Rule 61 proceeding, petitioner's arrest and convictions

> arose out of the invasion by two people of Lamont Johnson's home in Bridgeville, Delaware, around 10:00 p.m. on March 17, 2009. Johnson and his family were at home watching television when he heard someone trying to "kick in" his front door. Johnson looked out a window and saw two people standing outside his front door. Johnson then ran into a bedroom and grabbed a pistol. After hearing gunfire, Johnson shot his pistol in the direction of the intruders, causing them to run away. Johnson testified at trial that he disposed of the gun before the police arrived at his house because he was prohibited from possessing a gun. Johnson was unable to identify the two intruders.
>
> Later that evening, the Wilmington Police responded to a call from Christiana Hospital that a man had been dropped off with what appeared to be a gun shot wound in the upper chest. That man was [petitioner]. Petitioner told the hospital personnel that he had been shot in Wilmington. [Petitioner's] girlfriend testified at his trial that she had received a call from [petitioner] around 10:20 p.m., asking her to pick him up in Harrington. When she arrived in Harrington, she saw that [petitioner] had been shot and was bleeding. She was going to take him to Kent General Hospital in Dover, but he told her to instead go to Wilmington. She took him to Christiana Hospital and dropped him off without talking to anyone. [Petitioner] underwent surgery and had the bullet removed. The hospital personnel turned the bullet over to the Wilmington Police upon their request for it. The Wilmington Police turned the bullet over to the Delaware State Police. Before trial, the police recovered a bullet that Johnson had shot into his home and one he had shot into a nearby trailer during the home invasion. At trial, the State's firearm expert testified that the bullet recovered from [petitioner's] body matched the two bullets recovered from Johnson's home and nearby trailer.

(D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *State v. Rodriguez*, ID No. 903019123A, Letter Op. at 1-2, Bradley, J. (Del. Super. Sept. 10, 2012)).

Petitioner was arrested in March 2009, and was subsequently indicted for attempted first degree murder, first degree burglary, second degree assault, two counts of first degree reckless endangering, four counts of possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited ("PDWBPP"). (D.I. 13 at 3) The PDWBPP charge was severed prior to trial. (D.I. 13 at 3) While the case was being tried before a Superior Court jury, the State entered a *nolle prosequi* on the second degree assault and related weapon charges. The jury convicted petitioner of second degree assault as a lesser included offense of attempted first degree murder, and returned a guilty verdict on all of the remaining charges. The Superior Court sentenced petitioner to a total of fifty-four years of incarceration at Level V, followed by probation. *Id.* The Delaware Supreme Court affirmed petitioner's convictions and sentences on September 13, 2010. *See Rodriguez v. State*, 3 A.3d 1098 (Table), 2010 WL 3549863 (Del. Sept. 13, 2010).

In September 2011, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 13 at 3) The Superior Court denied the motion after determining that the sole ineffective assistance of counsel claim raised therein was meritless. (D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *State v. Rodriguez*, ID No. 903019123A, Letter Op. at 10, Bradley, J. (Del. Super. Sept. 10, 2012)). The Delaware Supreme Court affirmed that

judgment on post-conviction appeal. See Rodriguez v. State, 77 A.3d 272 (Table), 2013 WL 5494720 (Del. Oct. 18, 2013).

Petitioner timely filed a pro se § 2254 application in this court asserting two ineffective assistance of counsel claims. (D.I. 3) Soon after that filing, another habeas application challenging the same conviction was filed by an attorney representing petitioner, and a separate case was opened. See Rodriguez v. Pierce, Civ. A. No. 14-19-SLR. The application in Rodriguez, Civ. A. No. 14-19-SLR only asserted one ineffective assistance of counsel claim, which was identical to the first claim in petitioner's pro se application in this case. The court issued an order requesting clarification as to whether petitioner wished to proceed forward with his pro se application in the instant proceeding or with his counseled application in Rodriguez, Civ. A. No. 14-19-SLR. (D.I. 6) Petitioner responded that he wished to proceed forward with the instant proceeding, but that he wanted the court to treat the counseled application in Rodriguez, Civ. A. No. 14-19-SLR, as his first amendment to the application in this case. (D.I. 8) As such, Civ. A. No. 14-19-SLR was administratively closed, and the counseled application filed in that case was docketed as a first amendment to the application in the instant proceeding. (D.I. 9) Thereafter, the court ordered the State to answer the application. (D.I. 10) The State filed an answer in opposition (D.I. 13), asserting that the sole ineffective assistance of counsel claim[1] should be denied as meritless.

---

[1]Since the "first amendment to the [original pro se] application" only asserts one claim, the State properly concluded that petitioner either "deleted" or waived the other ineffective assistance of counsel claim that was included in the original application.

## III. STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); see also Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 98-100 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is

4

only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

In his sole ground for relief, petitioner contends that defense counsel provided ineffective assistance by failing to file a motion to suppress the bullet that was surgically removed from his body on the basis that the police seized the bullet from hospital personnel in violation of his Fourth Amendment rights. Specifically, petitioner contends that defense counsel should have filed a motion to suppress the bullet because petitioner did not consent to have the bullet turned over to the police and because the hospital's established procedures for collecting and preserving "forensic evidence" for use by the police made the hospital personnel "agents of the State." (D.I. 9 at 13) The Delaware Supreme Court denied this ineffective assistance of counsel claim on post-conviction appeal after determining that the argument lacked merit. Therefore, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with

5


reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir.1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to the instant claim. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of petitioner's case. When performing this inquiry, the court must review the Delaware

Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens.[2] *Richter*, 562 U.S. at 105. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

Defense counsel explained in his Rule 61 affidavit that he did not file a motion to suppress the bullet that was surgically removed from petitioner at the hospital because, based on the law and the facts, he concluded that such a motion would not have succeeded. (D.I. 15, App. to Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at A19) Defense counsel reasoned that the facts of petitioner's case were clearly

---

[2] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

7

distinguishable from *Winston v. Lee*, 470 U.S. 753 (1985),[3] because petitioner consented to the surgery:

> In the present case, [petitioner] voluntarily sought medical attention for a gunshot wound at Christiana Hospital and consented to the surgical intervention. The surgical intervention was for the benefit of [petitioner's] health and welfare, and not a "search" implicating constitutional principles. The surgery and surgical removal of the bullet from [petitioner] was performed by Christiana Hospital doctors/staff, as a private actor, not acting at the request or direction of the government. Upon removal, [petitioner] had no possessory interest or any reasonable expectation of privacy with respect to the bullet. Affiant believed that the police had come into possession of the bullet lawfully and not in contravention of [petitioner's] Fourth Amendment and [] Delaware Constitution rights.

*Id.* at A20. In his Rule 61 motion, petitioner raised the same argument he presents here, namely, that defense counsel should have filed a motion to suppress the bullet on the basis that petitioner did not consent to have the bullet turned over to the police and that the hospital's established procedures for collecting and preserving "forensic evidence" for use by the police made the hospital personnel "agents of the State." (D.I 9 at 13) The Superior Court analyzed petitioner's Fourth Amendment argument under *United States v. Jones*, 132 S.Ct. 945, 949 (2012), and *Katz v. United States*, 389 U.S. 347, 361 (1967), and concluded that: (1) the "surgical procedure to remove the bullet from [petitioner's] body was not a search that implicated his constitutional rights;" and (2) although "the hospital personnel were acting as an agent of the police when they preserved the bullet and turned it over to the police," those "actions by the health care personnel" did not constitute a search within the meaning of the Fourth Amendment to

---

[3]In *Winston*, the Supreme Court held that compelling a suspect to undergo surgery to extract a bullet from his chest would be unreasonable under the Fourth Amendment. See *Winston*, 470 U.S. at 767.

8

the United States Constitution" under *Jones* and *Katz*. (D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *Rodriguez*, ID No. 0903019123A, Letter Op. at 4-10) The Superior Court then held that defense counsel's failure to file a motion to suppress the bullet did not amount to constitutionally ineffective assistance, because defense counsel's "analysis of the applicable search and seizure law was correct." *Id.* at 10.

On post-conviction appeal, the Delaware Supreme Court explicitly refrained from addressing petitioner's arguments that (1) Christiana Hospital was acting as an agent for the police rather than in its private capacity when it delivered the bullet to the police, and (2) petitioner did not provide consent for the hospital to deliver the bullet to the police. *See Rodriguez*, 2013 WL 5494720, at *2. Instead, the Delaware Supreme Court held that petitioner was not prejudiced by defense counsel's failure to file a suppression motion because, as a threshold issue under *Katz* and *Jones*, petitioner did not have a reasonable expectation of privacy or property rights in the bullet such that his Fourth Amendment rights were infringed by the relinquishment of the bullet to the police once it was surgically removed. *Id.* at *1-2. The Delaware Supreme Court explained that petitioner did not have property rights in the bullet under *Jones* because he did not intend to be shot, nor did he intend to control the bullet when he presented himself for medical care; he "only wanted relief from his wounds." *Id.* at *1. The Delaware Supreme Court further explained that petitioner relinquished any reasonable expectation of privacy in relation to the bullet under *Katz* when he voluntarily presented himself to Christiana Hospital for medical treatment. *Id.* at *2. The Delaware Supreme Court opined, "[t]hose who come forward as victims of shootings can expect to be

9

objects of public and media attention," and "the strong public interest in the prevention of gun crime demands that those who seek treatment for gun wounds relinquish their expectation of privacy." *Id.*

In reaching its final determination that petitioner did not have a reasonable expectation of privacy in the bullet, the Delaware Supreme Court distinguished *Ferguson v. City of Charleston*, 532 U.S. 67 (2001). In *Ferguson*, the Supreme Court explained that the "reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without [his] consent," *id.* at 78, and held that a state hospital's practice of collecting urine samples for drug testing and reporting positive test results to law enforcement constituted an unreasonable search. *Id.* at 83-83. When distinguishing *Ferguson*, the Delaware Supreme Court explained that,

> [d]iagnostic tests reveal information about a patient's medical history which can reasonably be expected to remain confidential. In contrast, the bullet shot into [petitioner's] body does not reveal anything confidential about his medical history.

*Rodriguez*, 2013 WL 5494720, at *2.

Since the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim was based upon its determination that petitioner's Fourth Amendment rights were not infringed by the hospital's transfer of the bullet to police custody, the first step in the court's inquiry under § 2254(d) is to determine if the Delaware Supreme Court's rejection of petitioner's Fourth Amendment claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

The Fourth Amendment to the United States Constitution provides:

10

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported Oath or affirmation, and particularly describing the place to be searched, and the persons or things to seized.

U.S. const. amend. IV. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Consequently, a defendant who alleges that a search or seizure violated his Fourth Amendment rights must demonstrate that he either had a reasonable expectation of privacy that was invaded (*Katz*), or that he had possessory interest in the item that was searched/seized (*Jones*).

Although the Supreme Court has addressed whether a compelled medical procedure to obtain evidence violates a defendant's Fourth Amendment rights,[4] the Supreme Court has not yet considered the precise issue presented here, namely, whether a defendant's Fourth Amendment rights are violated when a hospital removes a bullet from the defendant's body during his consensual surgery, but transfers the bullet to the police pursuant to hospital policy and a statutory requirement that hospital personnel inform the police if they have treated gunshot victims.[5] As such, the

---

[4] *See, e.g., Rochin v. California*, 342 US. 165 (1952)(holding that forcibly pumping a suspect's stomach to obtain evidence is unconstitutional); *Schmerber v. California*, 384 U.S. 757 (1966)(finding no Fourth Amendment violation when an individual suspected of drunk driving was forced to undergo a blood test to use as evidence in subsequent criminal proceeding); *Winston v. Lee*, 470 U.S. 753 (1985)(applying *Schmerber* balancing test and holding that a compelled surgery to retrieve a bullet as evidence violated the suspect's Fourth Amendment rights).

[5] The absence of any Supreme Court precedent dealing with this precise issue is demonstrated by the Delaware Supreme Court's citation to decisions in other states and its act of distinguishing the instant issue from the issue in *Ferguson*. *See Rodriguez*, 2013 WL 5494720, at *2.

11

Delaware Supreme Court's determination that petitioner's Fourth Amendment claim lacked merit was not "contrary to" Supreme Court precedent. *See Thomas v. Carroll,* 581 F.3d 118, 124 (3d Cir. 2009).

Determining if the Delaware Supreme Court's decision involved an "unreasonable application of" clearly established federal law is the next step of the analysis. According to Third Circuit precedent, "an unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way." *Fischetti v. Johnson,* 384 F.3d 140, 148 (3d Cir. 2004). When "reviewing the reasonableness of the state courts' application of Supreme Court precedent, we must use as our point of departure the specific holdings of the Court's decisions." *Id.* at 151. "[A] court that unreasonably extends a rule in a new context or, in the alternative, unreasonably fails to extend a rule, may also be deemed to unreasonably apply the correct rule." *Id.* at 148.

After reviewing the record in this case, the court concludes that the Delaware Supreme Court's denial of petitioner's instant Fourth Amendment argument involved a reasonable application of *Jones* and *Katz*. A possessory interest is generally defined as the power and intent to control. *See, e.g., State v. Casey,* 296 S.E.2d 473, 482 n.6 (N.C. Ct. App. 1982). Here, petitioner did not have a possessory interest in the bullet under *Jones,* because he did not own or control the bullet that was shot from someone else's gun, he did not intend to be shot, and there is no evidence that he intended to control the bullet while it was inside or outside his body. Rather, by requesting medical care at Christiana Hospital, it can be presumed that petitioner's primary focus was the removal of the bullet from his body.

12

In turn, petitioner did not have a reasonable expectation of privacy with respect to the bullet under *Katz*. "To have a legitimate expectation of privacy, the defendant must show an actual or subjective expectation of privacy in the subject of the search or seizure and show that this expectation of privacy is objectively justifiable under the circumstances." *United States v. Nagle*, 803 F.3d 167, 176 (3d Cir. 2015)(internal citations omitted). Here, the bullet was not personal to petitioner because, unlike bodily fluids, it would not reveal any details about petitioner. As the Superior Court noted, the "bullet was, quite simply, a foreign object in [petitioner's] body that he had every intention of removing from his body as quickly as possible so that he would recover from his injuries. Beyond that he had no interest in the bullet." (D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *Rodriguez*, ID No. 0903019123A, Letter Op. at 9)

Even if petitioner did have a reasonable subjective expectation of privacy with respect to the bullet, he relinquished that right when he voluntarily presented himself to the Christiana Hospital emergency room and impliedly consented to any necessary medical attention. Significantly, petitioner does not assert, and nothing in the record suggests, that the police played a role in the decision made by the surgeon to operate and remove the bullet. Rather, the operation was required under good medical practice. Moreover, although the Delaware Supreme Court did not independently address whether petitioner consented to the transfer of the bullet to the police,[6] the court finds

---

[6]The court acknowledges that the Superior Court's Rule 61 decision states that the Forensic Nurse Examiner's act of contacting a Wilmington police officer about the bullet and the police officer's subsequent acquisition of the bullet "was done without [petitioner's] consent and pursuant to Christiana Care's policy requiring its personnel to preserve a bullet that is removed from a patient. (D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *Rodriguez*, ID No. 0903019123A, Letter Op. at 7)

13

that petitioner's verbal consent to the release of evidence that he gave to the Forensic Nurse Examiner prior to his surgery is relevant to the expectation of privacy issue. (D.I. 15, State's Corrected Ans. Br. in *Rodriguez v. State*, No. 25, 2013, at 7) One of the State's exhibits in petitioner's Rule 61 proceeding was a thirteen-page document with a cover page, "Certification of Medical Record Copy," which states:

> I give permission to the Forensic Nurse Examiners to perform a physical examination and to collect evidence. I understand that evidence collection may include taking photographs, blood, bodily fluids, clothing and anything on or near my person.
>
> I give permission to the Forensic Nurse Examiner to release all items obtained and collected to law enforcement representative.

(D.I. 15, App. to State's Ans. Br. in *Rodriguez v. State*, No.25,2013, at B-61) On this document, the Forensic Nurse Examiner wrote "Verbal consent given." *Id.* By consenting to evidence collection that "may include [] blood, bodily fluids [] and anything on or near my person," petitioner arguably consented to the collection of the item creating the need for his surgery, namely, the bullet, as well as the release of that bullet to law enforcement. In short, the court views petitioner's verbal consent to the Forensic Nurse Examiner prior to his surgery as providing additional support for its conclusion

---

The Superior Court's conclusion that petitioner did not consent to the transfer of the bullet to the police appears to be premised on another forensic nurse's testimony stating that she did not approach petitioner after the surgery to obtain further consent to release the bullet to the police. (D.I. 15, State's Corr. Ans. Br. in *Rodriguez v. State*, No.25, 2013 at 9) In addition, the Superior Court only discussed the issue of consent when determining if the hospital personnel were acting as an agent of the police, and not during its discussion concerning petitioner's expectation of privacy. (D.I. 15, Appellant's Op. Br. in *Rodriguez v. State*, No. 25,2013, at *Rodriguez*, ID No. 0903019123A, Letter Op. at 8-9) Therefore, the court does not view the Superior Court's statement that petitioner did not consent to the transfer of the bullet as precluding the court's reliance on the verbal consent petitioner provided prior to his surgery as it pertains to the issue of petitioner's expectation of privacy.

14

that petitioner lost any reasonable expectation of privacy in the bullet once it was removed from his body.

Based on all of these circumstances, the court concludes that the Delaware Supreme Court reasonably applied clearly established federal law in concluding that petitioner's Fourth Amendment rights were not infringed when Christiana Hospital personnel transferred the bullet to police custody following the consensual surgical removal of the bullet from petitioner's body. Given this conclusion, petitioner cannot satisfy either prong of the *Strickland* standard. First, having determined that petitioner's Fourth Amendment rights were not infringed by the removal of the bullet and transfer to the police demonstrates that defense counsel's decision not to file a futile motion to suppress the bullet did not fall below an objective standard of reasonableness. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Second, because petitioner's Fourth Amendment rights were not infringed, petitioner cannot establish a reasonable probability that the outcome of his proceeding would have been different but for counsel's failure to file a futile suppression motion. Viewing the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim decision through the doubly deferential lens applicable on habeas review, the court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in holding that defense counsel's failure to file a suppression motion did not amount to ineffective assistance. Accordingly, the court will deny petitioner's sole claim as meritless.

## V. CERTIFICATE OF APPEALABILITY

The court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a

15

petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.